UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------ X

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

3:09-md-02100-DRH-PMF

MDL No. 2100

------------------------------------------------------------

**This Document Relates to:**

*Maryam Bennett, et al. v. Bayer HealthCare Pharmaceuticals Inc., et al.* No. 3:13-cv-20026-DRH-PMF

**Judge David R. Herndon**

ORDER DISMISSING WITH PREJUDICE

**HERNDON, Chief Judge:**

### I.  INTRODUCTION

This matter is before the Court on Bayer's motion to show cause why the plaintiff's case should not be dismissed with prejudice for failure to comply with Case Management Order Number 61 ("CMO 61") (MDL 2100 Doc. 2740) (Doc. 59). CMO 61 is an order relating to the Court's Gallbladder Resolution Program. CMO 61 establishes a procedure to assure that plaintiffs who choose to litigate gallbladder injury claims act to preserve their medical records. CMO 61 applies to all plaintiffs alleging a gallbladder injury, except those who allege that they also suffered a venous or arterial thromboembolism (VTE or ATE). In accord with CMO 61, the Special Master filed a report and recommendation on January 13, 2014 (Doc. 96).

1

## II. BACKGROUND – GALLBLADDER RESOLUTION PROGRAM

This Court, in cooperation with the state court Judges in the Pennsylvania, New Jersey and California coordinated proceedings, appointed members to a Negotiating Plaintiff Committee ("NPC") (MDL 2100 Doc. 2735). The NPC was established to (a) negotiate terms of a voluntary Gallbladder Resolution Program with counsel for the Bayer defendants with the assistance of special Master Stephen Saltzburg and (b) work with the Courts, the Special Master and counsel for the Bayer Defendants to implement said program on behalf of plaintiffs (MDL 2100 Doc. 2735).

The terms of the Gallbladder Resolution Program were adopted and endorsed by the NPC and by members of the MDL 2100 Plaintiffs' Steering Committee ("PSC") as a compromise. The NPC and the PSC determined that this compromise was in the best interest of plaintiffs alleging gallbladder injuries after considering various issues including ability to demonstrate liability, the likelihood of dismissal, and the defendants' interest in terminating this litigation,

## III. PRELIMINARY MATTERS

Prior to addressing the merits of Bayer's motion to dismiss, the Court addresses certain matters raised by the plaintiff's briefing.

### A. Inflammatory Remarks Regarding the Court

The Court will not respond to the plaintiff's contumacious inflammatory remarks about the Court. However, if such conduct continues, the plaintiff may well find herself ordered to appear before the Court for a contempt hearing.

### B. Allegations of Wrongdoing as to Defense Counsel

The plaintiff continues to allude to alleged wrongful conduct on the part of defense counsel. The plaintiff has filed two sanctions motions against Bayer and/or its counsel. The Court denied the first motion for sanctions on the merits (Doc. 78). The Court denied the second motion for sanctions for procedural reasons (Doc. 72). Thereafter, the plaintiff sought leave to file a motion for sanctions based on alleged lies and defamation (Doc. 75). The Court granted the plaintiff leave to file (Doc. 84). However, the plaintiff never followed through with filing any such motion. If the plaintiff wanted the Court to address allegedly wrongful conduct on the part of defense counsel, she should have done so by filing the appropriate motions.

### C. Motions for Summary Judgment

The plaintiff takes issue with the Court's handling of her motions for summary judgment. Prior to transfer to this Court and to the completion of any discovery, the plaintiff filed a motion for summary judgment (Doc. 24), an amended motion for summary judgment (Doc. 28), and a motion to amend her amended motion for summary judgment (Doc. 30) in the Northern District of

Georgia. The case was transferred to this Court on October 3, 2013 (Doc. 33). On October 15, 2013, the Court received and filed on behalf of the plaintiff an additional motion for summary judgment (Doc. 43). On November 4, 2013, the plaintiff filed a motion for leave to file a summary judgment motion and a certificate attesting that she had conferred with opposing counsel in a good faith effort to resolve the matter without Court action (Doc. 52).[1]

On December 10, 2013, the Court denied the plaintiff's motion for leave to file a motion for summary judgment (Doc. 76). In denying the plaintiff's motion for leave to file, the Court explained as follows:

> At this stage in the litigation, the plaintiff's motion for summary judgment is premature. The plaintiff has yet to fulfill her obligations pursuant to CMO 12 and CMO 61. The defendant must have access to the necessary discovery in order to respond to any motion for summary judgment. Further, without such discovery, the Court cannot appropriately assess any motion for summary judgment. The motion for leave to file a summary judgment motion is therefore DENIED without prejudice. The Court will reconsider the issue at a later date.

That same day, the Court denied the plaintiff's summary judgment motions for failure to comply with the requirements of MDL 2100 CMO 1. The plaintiff criticizes the Court's decision to deny her summary judgment motions arguing as follows:

> Judge Herndon denied the Plaintiffs' motion for summary based on his own false notions. If he had read through the motions before he

---

[1] Case Management Order Number 1 for MDl 2100 (3:09-2100 Doc. 83) requires as follows: "No motion shall be filed under Rule 11, 12 or 56 without leave of Court and unless it includes a certificate that the movant has conferred with opposing counsel in a good-faith effort to resolve the matter without Court action" (3:09-2100 Doc. 83 ¶ 5(d)).

>decided on them, he would've realized, a leave to file was entered. While, it was filed after the motion for summary judgment, it was filed, before either were reviewed, thus, making them filed in accordance to the rules of the MDL-2100.

(Doc. 103 p. 3). As the Court explained above, however, the motion for leave to file was denied because the Court concluded any summary judgment motion was premature. In light of this denial, the plaintiff's summary judgment motion was denied for failure to comply with MDL 2100 CMO 1 (3:09-2100 Doc. 83).

**D. Various Infractions**

The plaintiff contends the Court has "goes after" the plaintiff for slight infractions or creates infractions where none have been committed (Doc. 103 p. 1). For instance, the plaintiff contends the Court exhibited prejudice by instructing her to ensure that all of her pleadings contain an appropriate signature (Doc. 103 p. 5). On December 30, 2013, a *Notice* from the Court noted that the plaintiff's pleading (as well as previous pleadings) did not contain the requisite signature (as dictated by the Federal Rules of Civil Procedure and the applicable local rules) (Doc. 90). The Court did not penalize the plaintiff for failing to meet applicable signatory requirements. Rather, the Notice was merely informative and directed the plaintiff regarding how to ensure compliance in future pleadings (Doc. 90).

The plaintiff also takes issue with the Court's directive regarding representation of consortium plaintiff Cobrey Bennett (Doc. 103 pp. 4-5). On January 13, 2014, the Court issued an order explaining that although the plaintiff

may represent herself she cannot represent Mr. Bennett (Doc. 97). The Court ordered Mr. Bennett to inform the Court whether he will represent himself or who his counsel will be. The Court entered this order because Seventh Circuit authority requires it to do so. *See See Nocula v. Tooling Systems International Corp.,* 520 F.3d 719, 725 (7th Cir. 2008) ("one pro se litigant cannot represent another") *(citations omitted).* To date, Mr. Bennett has not complied with this Court's directive regarding representation.

Finally, the Court notes the other "infraction" it has had to repeatedly address with the plaintiff – the issue of *ex parte* communications. In previous pleadings, the plaintiff has taken issue with the Court's directive that she not engage in *ex parte* communications with the Court. On October 4, 2013, the plaintiff emailed the Court directly asking the Court to take special notice of her case and to rule on various motions (Doc. 34). The Court docketed a minute entry, explaining that the email constituted *ex parte* conduct and directing the plaintiff regarding future communications with the Court (Doc. 34). Thereafter, the plaintiff continued to email the Court directly contending, among other things, that she did not engage in *ex parte* communication with the Court because she was forwarding her email communications to a member of defense counsel (Doc. 35 p. 2). The Court entered a second order advising the plaintiff regarding proper communication with the Court (Doc. 35). The Court did not penalize the plaintiff in any way. Rather, the Court reiterated appropriate means of communicating with the Court (Doc. 35). Further, the Court provided the plaintiff with additional

resources (Doc. 35 pp. 3-5) (directing the plaintiff's attention to specific rules and providing links to the *pro se* litigant guide, local rules, electronic filing rules, and the CMECF User's Manual).

### IV. ANALYSIS – MOTION TO SHOW CAUSE

On December 3, 2013, Bayer filed a motion to show cause why this case should not be dismissed for failure to comply with the document preservation requirements in CMO 61. Under CMO 61, a plaintiff must send document preservation notices to certain pharmacies, medical facilities, and doctors (MDL 2100 Doc. 2740 §§ I.A and B); and provide Bayer with a list of the persons and entities notified, copies of the notices, and certification that the notices were sent (MDL 2100 Doc. 2740 § I.D). Bayer's motion to show cause seeks dismissal of the plaintiff's claims in accord with the provisions of Section I.E. of CMO 61.[2]

Pursuant to Section I.E. of CMO 61, the plaintiff had 30 days to respond to Bayer's motion to show cause. On December 28, 2013, the plaintiff filed a "motion to show good cause for delinquency of PFS" (Doc. 89). The largely nonsensical

---

[2] Pursuant to Section I.E of CMO 61, Gallbladder Plaintiffs who fail to fully comply with these requirements shall be given notice of such failure by e-mail or fax from Defendant's Liaison Counsel or his designee and shall be provided ten (10) additional days to cure such deficiency ("Cure Period")." Section I.E. goes on to provide that "[n]o other extensions will be granted unless agreed to by all Parties"; "[i]f Plaintiff fails to cure the deficiency within the Cure Period, Defendant's Liaison Counsel or his designee may file a Rule to Show Cause why the Gallbladder Claim should not be dismissed with prejudice"; "[p]laintiff shall thereupon have thirty (30) days to respond to the Rule to Show Cause"; and "[a]ny failure to respond to the Motion within the required period of time shall lead to the dismissal of the Gallbladder Claim with prejudice, except for good cause shown."

pleading purports to present reasons for why the plaintiff has not and/or need not comply with orders of this Court, including CMO 61 (Doc. 89). Nothing contained in the pleading, however, justifies the plaintiff's failure to comply with CMO 61.

At the expiration of the responsive pleading time, the motion was considered by Special Master Stephen Saltzburg.[3] Special Master Saltzburg reviewed the pleadings and the requirements of CMO 61 and filed a report and recommendation (Doc. 96). Special Master Saltzburg found that the plaintiff failed to comply with the requirements of CMO 61 and recommended that the plaintiff's claims be dismissed with prejudice in accord with the requirements of CMO 61(Doc. 96).

The parties were given 14 days to respond or object to Special Master Saltzburg's report and recommendation (Doc. 96). The plaintiff filed a response on January 19, 2014 (Doc. 103). The plaintiff's response does not show good cause for failure to comply with the requirements of CMO 61.

Upon consideration of Bayer's motion to dismiss, the plaintiff's responses thereto, the Special Master's report and recommendation, and the requirements of CMO 61, the Court finds that the plaintiff has failed to comply with CMO 61. Therefore, the plaintiff's claims, as well as any asserted consortium claims, are

---

[3] Section III of CMO 61 provides as follows: "The Court, by this Order, appoints Professor Stephen Saltzburg as Special Master to hear all motions regarding compliance with this Order, including motions directed to the sufficiency of the expert reports required under subparagraphs II (A) (5) and (6) above, and to recommend to this Court a ruling on each of the motions." (Doc. 2740 § III).

subject to with prejudice dismissal (see section I.E. of CMO 61). The Court adopts Special Master Saltzburg's report and recommendation as to this plaintiff. The plaintiff's claims are therefore **DISMISSED WITH PREJUDICE** for failure to comply with the requirements of CMO 61.

Further, the Court **DIRECTS** the **Clerk of the Court** to **enter Judgment** reflecting the same.[4]

SO ORDERED:

Digitally signed by David R. Herndon
Date: 2014.03.17 16:19:20 -05'00'

**Chief Judge**  
**United States District Court**

Date:  March 17, 2014

---

[4] The Court notes that Bayer filed an additional motion regarding the plaintiff's failure to comply with the discovery requirements of CMO 61 on January 8, 2014 (Doc. 93). The Court's ruling, however, renders the January 8th motion moot.